IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAYLA FULLER and LEGENDE LEE, individually and OBO L.L., a Minor, | : : : : |
| *Plaintiff,* | : : |
| v. | : CIVIL ACTION NO. 2:25-cv-2952 : : |
| THE SCHOOL DISTRICT OF PHILADELPHIA | : : **JURY TRIAL DEMANDED** : : : |
| *Defendant.* | : : : |

## VERIFIED COMPLAINT

Plaintiffs by and through their undersigned attorneys, brings this Complaint against the above-named Defendants, agents, and successors in office, to safeguard their rights under the United States Constitution, State, and Federal law, and in support thereof allege the following:

### PRELIMINARY STATEMENT

1. This action is brought under Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181 - 12189 (the "ADA"); and Pennsylvania state common law.

2. By this action Plaintiffs KAYLA FULLER, LEGENDE LEE and L.L. seek redress against Defendant SCHOOL DISTRICT OF PHILADELPHIA

("District" or the "School"), for the actions and omissions of the District, its Administration and their employees and agents, while Plaintiff was enrolled as a student. Plaintiff avers that Defendant owed a duty to Plaintiff, Defendant breached that duty, and that breach was the direct and proximate cause of injuries to Plaintiff and for common-law torts committed against Plaintiff; all as further described in this Complaint. Further, Defendant held various obligations under federal and state law to adequately program for L.L. in his educational placement and program and to provide him a free and appropriate public education ("FAPE")

3. Plaintiff seeks declaratory and injunctive relief against Defendant for its acts and seeks compensatory, consequential, and punitive damages from Defendant in respect of same. Plaintiff also seeks the recovery of attorneys' fees and costs in accordance with the ADA, Section 504 and the Civil Rights Attorneys' Fees Award Act of 1976, as amended, 42 U.S.C. § 1988(b).

## JURISDICTION AND VENUE

4. This Court's jurisdiction in this action is given by 42 U.S.C. § 12188, 29 U.S.C. § 794a and the general grant of federal question jurisdiction under 28 U.S.C. § 1331.

5. Plaintiff invokes the supplemental jurisdiction of this Court under 28 U.S.C. § 1367(a) to adjudicate claims arising under state law.

6. Venue in this District is proper under 28 U.S.C. § 1391(b), as most, if not all, of the events giving rise to the Complaint occurred within the territorial limits of the Eastern District of Pennsylvania.

## PARTIES

7. Plaintiff Kayla Fuller is the parent and natural guardian of L.L. a minor child with disabilities. Plaintiffs reside at 3701 Sepviva St Apt 122 Philadelphia PA 19137.

8. Plaintiff Legende Lee is the parent and natural guardian of L.L. a minor child with disabilities. Plaintiffs reside at 3701 Sepviva St Apt 122 Philadelphia PA 19137.

9. Plaintiff L.L. is a minor child who at all relevant times was a student enrolled in the School District of Philadelphia.

10. L.L. is a "qualified individual with a disability" within the meaning of both Section 504 and the ADA, and the respective regulations thereunder.

11. Defendant School District of Philadelphia is a governmental entity organized under the City of Philadelphia for the purpose of providing K-12 educational services throughout the City of Philadelphia. Upon information and belief, Defendant School District of Philadelphia's primary place of business is 440 North Broad St, Philadelphia, PA 19130.

12. Defendant School District of Philadelphia is a "public entity" and place of "public accommodation" within the meaning of the ADA.

13. Defendant School District of Philadelphia is a "state actor" for all purposes under United States civil rights laws, including 42 U.S.C. § 1983.

## STATEMENT OF FACTS

14. Plaintiff was a student enrolled with the School District of Philadelphia at the Thurgood Marshall Elementary School.

15. L.L. was a student with disabilities and an Individualized Education Plan ("IEP") was created to program for him. He is diagnosed with *inter alia,* Intellectual Disability secondary to Down Syndrome.

16. L.L. is non-verbal.

17. This program placed him outside of the regular classroom and into the multiple disabilities support classroom.

18. L.L. received related services to include occupational therapy, speech language therapy and most relevant to the instant matter *special transportation.*

19. Specifically, L.L.'s IEP dictated that L.L. was entitled to "[s]afe Transport: L[.L.] is a student with intellectual disability who requires safe transport."

20. Further the IEP required that L.L. be provided a seatbelt when traveling on the school bus. Had that provision been enforced by a bus attendant or the bus operator the events of May 3rd, 2024 would likely not have occurred.

21. L.L. utilized school bus transportation to travel both to and from school.

22. Specifically, route 2574 was the bus route L.L. rode.

23. This was the case on May 3rd, 2024.

24. On that date, route 2574 was driven by bus operator Daysha Gregory ("Gregory").

25. Gregory was an employee of the School District of Philadelphia.

26. Generally, there is a bus attendant on the bus; however, for reasons unknown, on May 3rd, 2024, the regular attendant was not present and no substitute was assigned to the route.

27. The bus utilized for route 2574 on May 3rd, 2024 was an eight-row, sixteen-bench model, capable of seating up to thirty-two students with an additional area to the rear for accommodating students in wheelchairs.

28. There was a camera recording video and audio on May 3rd, 2024, which was shown, but not released to L.L.'s father. As of the date of filing, Plaintiff's counsel has made diligent efforts to obtain the video, but the District has refused to provide it. A right-to-know request was filed, and the Defendant invoked a thirty-day extension. The assigned hearing officer would erroneously find in favor of the District on the basis that the video was preserved for investigative purposes. Rather than continuing appellate proceedings on the right to know issue, the undersigned counsel will instead seek the video through discovery as part of the instant litigation.

29. L.L.'s father was permitted to view the video in person and has verified herein that the summary of the video is true and correct.

5

30. During the events of May 3rd, 2024, bus operator Gregory was conversing on her cellular phone about personal matters.

31. L.L. was seated on the right side or 'passenger side' of the bus.

32. Another minor student, T.M. (age fifteen at the time of incident) was seated on the left or 'drivers side' of the bus.

33. T.M. moved around the bus to be seated across from L.L.

34. T.M. carefully watched Gregory to ensure he would not be seen moving seats.

35. T.M. then sat on the floor, opened L.L.'s legs and sat between his legs facing his groin.

36. T.M. then brings L.L. to his seat and physically places him in his lap.

37. L.L.'s pants, underwear and diaper were all pulled down.

38. At this point, T.M. had L.L. on his lap but L.L. was facing towards the aisle.

39. T.M. can be seen thrusting his hips while L.L.'s body sways and bobs in conjunction.

40. T.M. then turned L.L. to face the front of the bus, still in T.M.s lap.

41. At this point T.M. was sexually gratifying himself by thrusting against L.L.'s exposed buttocks.

42. T.M. was looking down while continuing to manipulate L.L.s body in his lap.

43. At some point, grunts, cries and other verbal signs of distress can be heard from L.L.

44. It is believed that at this point T.M. penetrated L.L.'s anus with his penis.

6

45. L.L., appearing to be in physical pain and discomfort as well as emotionally upset moves away from T.M. wearing only his shirt. His pants, underware and diaper were still removed.
46. The sounds of L.L. grunting and crying captured the attention of bus operator Gregory who looked into the mirror equipped on the vehicle for the purpose of looking at the passengers.
47. Prior to this, Gregory was preoccupied with her cellular phone call. "The Board prohibits school vehicle drivers from texting and from using a handheld mobile telephone or other electronic device while driving a school vehicle except when it is necessary to communicate with law enforcement officials or other emergency services. It is a violation of District policy for school-bus drivers to use their mobile device while operating a bus." Here, Gregory was clearly not on the phone with emergency service and the call was of a personal nature.
48. Gregory pulled the bus over and walked back to where L.L. and T.M. were seated.
49. Gregory would inquire of T.M. and L.L. what was going on but would receive no response.
50. Gregory would assist L.L. with putting his clothes back on properly and would bring him to a seat nearer to the driver's seat.
51. Gregory would complete her route to include dropping off L.L.

52. For reasons unknown, Gregory did not inform Plaintiff Fuller or Plaintiff Lee about what happened. Gregory would only report this to her dispatcher upon her return to the depot.

53. Fortunately, the dispatcher would report the incident to her supervisor who would report it to the School otherwise, because L.L. is nonverbal the incident may have been swept under the rug.

54. An investigation was initiated by Title IX Coordinator Andrea Prince.

55. The law firm of King Spry led the investigation.

56. The investigation was inadequate.

57. Both L.L. and T.M. are non-verbal. Yet, neither was interviewed by a professional trained in interviewing nonverbal parties.

58. In the investigative report it states: "LL was nonverbal and unable to communicate meaningful responses to any set of questions. He required numerous re-directions during the interview and was unable to provide any facts or additional detail regarding his interaction with T.M."

59. This statement makes it evident that the investigator was unable to ascertain any meaningful information from L.L. Yet the District still did not bring in a professional who was competent in interviewing non-verbal children. Further, they did not bring in a professional with experience and training in working with children who are victims of sexual assault or rape.

60. The investigator reviewed the CCTV footage from the bus as well as interviews with L.L.'s parents. This evidence provides indisputable proof that sexual contact, even if not definitely penetrative, took place.

61. The Defendant's conduct, together with its deliberate indifference and intentional discrimination, is the direct and proximate cause of the Plaintiff's harm.

62. As a result of the incident, L.L. would randomly break down into crying fits.

63. L.L. would refuse to board the vehicle which now transports him to and from school resulting in Plaintiff Fuller having to physically place him into the vehicle.

64. L.L. also became distant from all male figures in his life and would refuse to engage in play with men.

65. This Complaint now follows.

## CAUSES OF ACTION

### Count 1

### Title II of the Americans With Disabilities Act of 1990
### Discrimination and Exclusion Based On Disability

66. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs of this Complaint as if set forth in full herein.

67. The Americans with Disabilities Act ("ADA") prohibits discrimination against qualified individuals with disabilities on the basis of their disability. 42 U.S.C.

9

§§ 12161, 12132. To establish a claim under the ADA, a plaintiff must demonstrate that: (1) he has a disability, or was regarded as having a disability; (2) he was "otherwise qualified" to participate in school activities; and (3) he was "denied the benefits of the program or was otherwise subject to discrimination because of her disability." *A.G. v. Lower Merion Sch. Dist.*, 542 F. App'x 193, 198 (3d Cir. 2013).

68. The Defendant District discriminated against and denied L.L. the benefits to his program, under the Americans with Disabilities Act:

    a. The Plaintiff is recognized as a person with disabilities, which includes, *inter alia,* Intellectual Disability secondary to Down Syndrome.

    b. The District is a federal funds recipient and its buildings and facilities are places of public accommodation.

    c. L.L. is otherwise qualified to participate in the program.

    d. The Defendant District denied L.L. the benefits of his program by failing to adequately program to ensure his safety.

69. As a direct and proximate result of Defendant's deliberate indifference and intentional discrimination, it denied L.L. the benefits of his program on the basis of his disability.

70. Wherefore, the Plaintiff prays for relief against Defendant as hereinafter set forth in the prayer for relief.

## Count 2
## DISCRIMINATION UNDER § 504 OF THE REHABILITATION ACT

71. L.L. hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

72. To establish a prima facie case under the §504 of the Rehabilitation Act ("RA")[1], a party must show: (a) they were a person with a disability; (b) they were otherwise qualified for participation in the program; (c.); the program they are challenging receives federal financial assistance; and (d.) they were subject to discrimination solely on the basis of their disability. *Hornstine v. Township of Moorestown,* 263 F. Supp. 2d 887, 905 (D.N.J 2003).

73. The Defendant District discriminated against, and denied L.L. the benefits to his program, under the Rehabilitation Act:

    a. The Plaintiff is recognized as a person with disabilities, which includes, *inter alia*, intellectual disabilities secondary to down syndrome.

    b. The District is a federal funds recipient and its buildings and facilities are places of public accommodation.

    c. L.L. is otherwise qualified to participate in the program.

    d. The Defendant University denied L.L. access to his educational programs by failing to adequately ensure his safety.

---

[1] *See* 29 U.S.C. § 794(a).

    e. As a direct and proximate result of Defendant's deliberate indifference and intentional discrimination, it denied L.L. the benefits of his program on the basis of his disability.

Wherefore, the Plaintiff prays for relief against Defendant as hereinafter set forth in the prayer for relief.

## COUNT 3
## TITLE IX--Erroneous Outcome

74. Plaintiff L.L. hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

75. Under the Erroneous Outcome theory, a plaintiff "must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding . . . [and] also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Powell v. St. Joseph's Univ.*, 2018 U.S. Dist. LEXIS 27145 at 19.

76. While, typically, this cause of action is applied to wrongfully accused respondents, in the present matter, it is being asserted by the complainant.

77. As pleaded in 53, the District conducted a Title IX investigation, which took place from in May of 2024.

78. As pleaded in ¶¶59, L.L., through his parents, presented more than clear and convincing evidence that he was the victim of sexual harassment.

12

79. The District found the respondent not to be responsible for sexual harassment or sexual battery.

80. The District erroneously found, against the weight of evidence, that this student was not responsible for sexual harassment.

81. The outcome involved the Plaintiff being illegally denied access to his education and to a fair process. As a result, the District denied him access to his education.

82. The District's deliberate indifference to the ongoing discrimination and Title IX process denied L.L. the benefits of his education. As such, the District's conduct is the direct and proximate cause of the Plaintiff's damages.

Wherefore, the Plaintiff prays for relief against Defendant as hereinafter set forth in the prayer for relief.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all matters capable of being so tried.

                                          Respectfully submitted,

                                          **MONTGOMERY LAW**
                                          1420 Locust Street, Suite 420
                                          Philadelphia, PA 19102
                                          (215) 650-7563
                                          Email: kyle@educationlawyers.com
                                          ***Attorneys for Plaintiffs***

                            By: _____
                                          Kyle Anthony Adams
                                          PA Attorney ID No. 332876

**Filed: June 9, 2025**

## **VERIFICATION**

I, KAYLA FULLER, hereby declare:

1. I am a Plaintiff in the above-captioned matter.
2. I have read the Verified Complaint and I am familiar with the contents thereof.
3. I make this verification based upon my own personal knowledge or where a statement is based upon information and belief to the best of my knowledge and information.
4. I declare under penalties applicable to false statements under Pennsylvania law and Federal law that the statements in the foregoing Verified Complaint are true and accurate.

Executed on June 5, 2025

_____
Kayla Fuller

## **VERIFICATION**

I, LEGENDE LEE, hereby declare:

1. I am a Plaintiff in the above-captioned matter.
2. I have read the Verified Complaint and I am familiar with the contents thereof.
3. I make this verification based upon my own personal knowledge or where a statement is based upon information and belief to the best of my knowledge and information.
4. I declare under penalties applicable to false statements under Pennsylvania law and Federal law that the statements in the foregoing Verified Complaint are true and accurate.

Executed on June 5, 2025

_____

Legende Lee